C. M. FORREST and ISAAC COBBS, Appellants, v. THOMAS B. O'BRYAN, EDWARD S. O'BRYAN, AND OTHERS, Appellees.

**Partnership contract:** CONSIDERATION. An oral agreement by which
1 defendant was to purchase in his own name a single tract of land, paying therefor with his own funds, to be repaid by a sale of mining rights, and to which plaintiffs neither contributed nor engaged to contribute anything, if sufficient to establish a partnership in the profits, still the agreement could not be enforced for want of consideration.

**Partnership contract:** RESULTING TRUST. A mere verbal agreement
2 whereby defendant was to purchase a tract of land in his own name and with his own funds to be resold and the profits above cost to be the joint property of plaintiffs and defendant, and to the purchase of which plaintiffs contributed nothing, gave them no right or interest in the land; nor was defendant's relation to the claimed partnership shown to have been such as to raise a trust in favor of plaintiffs.

*Appeal from Monroe District Court.*— HON. ROBERT SLOANE, Judge.

SATURDAY, FEBRUARY 11, 1905.

THE opinion states the case.

*J. C. Mabry* and *N. E. Kendall,* for appellants.

*T. B. Perry* and *W. W. O'Bryan,* for appellees.

WEAVER, J.— The plaintiffs claim that in October, 1900, they entered into an oral agreement of partnership with the defendant Thomas B. O'Bryan for the purpose of purchasing certain land to be sold again for the benefit of the firm; that in pursuance of said agreement said defendant did purchase the land, but caused the same to be conveyed to his son, the defendant Edward S. O'Bryan.. It is alleged, however, that Edward S. O'Bryan was not in fact a bona fide purchaser of the land; that he paid no part of the consideration therefor, but took the naked legal title at the request of his father as a method of carrying out the purposes of the alleged partnership, and held said title in trust for said partners, and afterwards did in fact convey the land to Thomas B. O'Bryan, who received it for the use and benefit of the firm. It is also alleged that defendant has sold the coal underlying the land for more than enough to pay the purchase price of the premises, leaving a profit of over $600 in money and the entire surface of the land, in all of which the plaintiffs are entitled to share. The defendant, it is charged, denies and repudiates the partnership, and purposes to exclude plaintiffs from any part or share in the property or profits, wherefore they ask to have their rights therein confirmed, and that the partnership be dissolved, its affairs settled, and a division of its assets ordered.

The defendants deny the alleged partnership agreement,

and say that the land was purchased by Edward S. O'Bryan in good faith and in his own right. They also allege that, after Edward S. O'Bryan received such conveyance, plain-tiffs recognized his title and ownership, and took from him a written option for the purchase of the coal underlying the surface of said land; making no claim of title or right in themselves, other than such as they obtained by virtue of said option. Defendants also plead the statute of frauds. The Consolidation Coal Company, which was the purchaser of the mining rights in the land, was made a party to the suit; but, by a stipulation entered of record, said company was permitted to apply the unpaid purchase price of said rights in discharge of the debt contracted by Edward S. O'Bryan in the purchase of the land, and deposit the re-mainder to await the decree of the court in the case. This being done, neither party makes any claim for further relief against the company. A trial upon the merits resulted in a decree for the defendants, and the plaintiffs appeal.

I.   The testimony shows that the plaintiffs were, and for a considerable period had been, agents of the coal company, engaged in purchasing or securing options for the purchase

1. PARTNERSHIP
   CONTRACT:
   consideration.

of mining rights in lands in the vicinity of the tract in controversy. There is evidence that Thomas B. O'Bryan was also in the company's employment, though the precise nature of his service is not made clear by the record. The company desired to secure an option for the purchase of the coal under a tract of one hundred and fifty-five acres of land in Monroe county, owned by one Brown, a resident of Chariton, Iowa. With knowl-edge of this situation, plaintiffs testify they entered into an agreement with Thomas B. O'Bryan by which the three persons should together purchase the land for the purpose of making a sale of the mining rights to their common employer at such a rate as would leave them a profit, which should be equally divided. That there was some such oral agreement or understanding is quite satisfactorily shown,

but neither plaintiff ever paid, advanced, or invested any sum or amount, in money or service, for the carrying out of the venture. Indeed, it is not claimed that either of them promised or undertook to contribute anything whatever to the alleged partnership enterprise, unless it be the benefit of their confidential relations to the corporation which it was assumed would purchase the coal. They claim and testify that Thomas B. O'Bryan undertook and agreed himself to pay whatever was necessary to secure this land, and take the title in his own name for the common benefit of the partners, and was to be reimbursed for his expenditure out of the proceeds of the sale of the mining rights. Assuming all this to be true, we have to inquire whether a partnership has been established. There is no claim that the alleged agreement contemplated a dealing in real estate generally. It had in view a single transaction concerning a single tract of land, which was to be obtained under circumstances which insured the promoters against loss. True, one of the plaintiffs testifies to an understanding that profits should be shared and losses borne in equal shares, but the record makes it very certain that this was one of those rarely fortunate transactions in which no risks were to be taken by any one. Indeed, it appears to have been what in street parlance would be called a " cinch " for all concerned, except, of course, the coal company. Moreover, as we have already noted, the plaintiffs neither contributed nor undertook to contribute anything whatever to the joint enterprise. The purchase was to be made by Thomas B. O'Bryan in his own name, and with his own money, and the property thus acquired was to be held and finally conveyed by him for the joint benefit of all. Without going into any inquiry as to the essentials of a partnership, we have to suggest that there is room for serious doubt whether the facts, even upon the plaintiffs' version, are sufficient to bring the relation of the parties within any accepted definition of that term. If, after the conversation in which it is claimed the agreement

was made, O'Bryan' had expressly repudiated the promise, and refused to proceed farther or to purchase the land, would an action for damages lie at the instance of the plaintiffs? In our judgment, it would not. If for no other reason, the lack of consideration for the promise would be a sufficient reason for denying its enforceable character. It can hardly be claimed to be a case of mutual promises, in which each serves as a consideration for the other, for there seems to have been no mutuality of obligation, but, rather, a naked promise by O'Bryan to buy the property upon his own personal responsibility, and, when the deal was completed by turning over the mining rights to the company, or to one of the plaintiffs as its agent, to share the profits with his alleged partners.

II.   Whatever may be held as to the validity or character of the agreement, it did not of itself vest the plaintiffs with any right or interest in the land.   At that time the land

2. PARTNERSHIP CONTRACT: resulting trust.

was owned by a third party, who was under no obligation to sell or convey it to the partnership or to any of its members. Until O'Bryan or some other member of the alleged firm should purchase it, the partnership had no capital, owned no property, possessed no assets.   In short, the whole fabric rested upon the possible purchase of the land by Thomas B. O'Bryan from its then owner, Brown, who was not a party to the deal, and presumably had no knowledge of it.   But Thomas B. O'Bryan did not purchase it.   It was purchased by Edward S. O'Bryan, from whom the plaintiff Cobbs took the mining option for the coal company.   Edward S. O'Bryan was under no obligation not to buy the land in his own right, or to obtain the title for the benefit of the plaintiffs or Thomas B. O'Bryan.   Appellants contend that the purchase was actually made by the latter, and the title taken in Edward in trust for the partners.   This is explicitly denied by both defendants, who testify that the money paid at the time of the purchase was the money of Edward, who also gave the notes

and mortgage for the deferred payments, executed the subsequent option for sale of mining rights, and later conveyed the land to his father for a valuable consideration. There are circumstances which may justify a suspicion that he was acting in the interest of his father from the outset, but nothing which amounts to proof of that fact. So far as the record discloses, Edward S. O'Bryan had no knowledge or notice of the alleged partnership agreement, or of the plaintiffs' claimed interest in the property or its proceeds, until long after the land was purchased by him. He was of adult years, and the simple fact that he was his father's son is not sufficient to justify us in placing a fraudulent construction upon his acts. There is no evidence whatever that he took the title under an express trust in favor of the partnership, nor did he have any such relation to the partnership that a resulting or constructive trust can be raised in its favor.

These conclusions render it unnecessary for us to consider the effect, if any, which the statute of frauds may have upon the rights of the parties.

We are satisfied with the correctness of the conclusions of the trial court, and the decision appealed from is *affirmed*.